# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs October 26, 2011

## STATE OF TENNESSEE v. MARCELL JERMAINE MARBURY

**Appeal from the Criminal Court for Hamilton County**
**No. 257771     Rebecca J. Stern,  Judge**

**No. E2011-01035-CCA-R3-CD - Filed February 28, 2012**

In September 2006, the Defendant, Marcell Jermaine Marbury, pled guilty to voluntary manslaughter.  He was sentenced as a Range I, standard offender to six years and was placed on probation.  Subsequently, the Defendant was transferred to enhanced probation.  In February 2011, a violation report was filed, the fourth against the Defendant, citing violations of an arrest for a new offense, failure to report, and possession of illegal drugs.  Following a hearing, the trial court revoked the Defendant's sentence of probation and ordered that he serve the remainder of his six-year sentence in the Department of Correction ("DOC").  On appeal, the Defendant challenges the trial court's imposition of total incarceration.  After a review of the record, we conclude that the trial court did not abuse its discretion and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Ardena J. Garth, District Public Defender; Richard Kenneth Mabee (on appeal) and Blake F. Murchison (at hearing), Assistant Public Defenders, Chattanooga, Tennessee, for the appellant, Marcell Jermaine Marbury.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Senior Counsel; William H. Cox, III, District Attorney General; and William H. Hall, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### FACTUAL BACKGROUND

On September 6, 2006, the Defendant pled guilty to voluntary manslaughter, a Class

C felony. <u>See</u> Tenn. Code Ann. § 39-13-211. He received a six-year sentence as a Range I, standard offender and was placed on probation.

The first violation warrant against the Defendant was issued on July 30, 2007, alleging that the Defendant had violated the rules of his probation by being arrested for misdemeanor theft and by failing two drug screens. On November 26, 2007, the trial court dismissed the revocation petition, placed the Defendant on intensive probation, and extended the probationary term for one year.

On July 9, 2008, the Defendant was again alleged to have violated the conditions of his probation by admitting to using marijuana on two occasions, failing two drug screens, missing curfew twice, and failing to complete a drug treatment program as instructed. The Defendant was arrested on July 29, 2008. In October 2008, the Defendant was referred to the "CADAS program" for a drug assessment. Thereafter, on November 10, 2008, the Defendant conceded the probation violation, and the trial court revoked the Defendant's probation. The Defendant was released on that same day and returned to intensive probation, where he was to complete 10 days of public service work within six months of his release.

A third violation warrant was issued on May 12, 2009, alleging that the Defendant had failed to perform the court-ordered public service work. On February 8, 2010, the trial court revoked the Defendant's probationary sentence but released him, ordering once again that he be returned to intensive probation, with an extension of his probationary term for an additional year.

The Defendant was arrested on the present violation warrant on February 18, 2011. The violation report was based upon allegations (1) that the Defendant failed to report for his office visits in January and February 2011; (2) that the Defendant obtained new charges by being arrested on February 9, 2011, for possession of marijuana for resale; and (3) that he possessed marijuana on February 9, 2011. A hearing on the warrant was held on April 25, 2011.

Richard Irvin with the Board of Probation and Parole testified that he was assigned to supervise the Defendant in September 2006. Mr. Irvin briefly recapped the Defendant's history while under his supervision. When asked about the Defendant's behavior since the last revocation, Mr. Irvin stated that the Defendant had "continued in the same behavior[,]" missing curfews and office visits, admitting to marijuana usage, and failing drug screens.

According to Mr. Irvin, the Defendant tested positive for marijuana in August 2010. Thereafter, Mr. Irvin placed the Defendant in an in-house drug treatment program run by a forensic social worker. The Defendant did not complete the program. At one point, Mr.

Irvin asked the Defendant to move from his residence on Sholar Avenue "because of domestic issues." The Defendant complied at first, moving in with his father, but he still admitted to using drugs during that time period. Mr. Irvin relayed that the Defendant left his father's residence and moved in "with a young lady[.]" His arrest for possession of marijuana for resale followed.

Mr. Irvin testified that, just before the revocation hearing began, he had been informed by the assistant district attorney general that the Defendant had pled guilty to the marijuana possession charge. Mr. Irvin also stated that the Defendant's office visits were "scheduled for every two weeks[,]" that the Defendant had missed his January 20, 2011 appointment, and that he had not seen the Defendant following his arrest on February 9, 2011.

When asked if he had sought drug treatment for the Defendant, Mr. Irvin testified that the Defendant was placed in intensive outpatient treatment with CADAS at one time, but he was expelled from the program when he continued to use drugs. The Defendant was also kicked out of an in-house Board of Probation and Parole program conducted by a forensic social worker for continuing to use drugs. Mr. Irvin opined that he could not envision "any other program for [the Defendant]." Mr. Irvin further provided, "And it's constantly been the same problem, a drug problem that he just refused to stop using." On cross-examination, Mr. Irvin testified that the Defendant had never been arrested for "any violent offense" and that "[e]verything" appeared "to be drug related[.]"

The Defendant's mother, Elizabeth Marbury Thornton, testified that the Defendant had resided with her intermittently during his probationary period. According to Ms. Thornton, the Defendant was "all right" as long as he was living with her, "but when he started living with the other girl he just started doing things that he wasn't supposed to do." Ms. Thornton averred that the Defendant could live with her if he was reinstated to probation. She stated that she needed the Defendant's help at home because she had cancer and the Defendant's father had congestive heart failure. She also hoped the Defendant would be allowed a chance to help care for his four-week-old daughter.

On cross-examination, Ms. Thornton acknowledged that this was not the Defendant's first probation violation. She acquiesced that the Defendant would not be able to assist her by driving because he had been declared a habitual traffic offender.

Leanna Lee testified that she was the mother of the Defendant's child and resided with the Defendant's mother. She stated that raising her daughter on her own was "[v]ery hard" and asked the court to return the Defendant to probation so he could help her with the baby's care.

The Defendant testified, acknowledging that he had a drug problem and that he knew he needed quit. When asked how things would be different this time if he was returned to probation, he could not offer any reassurances to the court. The Defendant testified that, if reinstated to probation, he would not "have any issues" living with his mother. He said that he was "just asking for another chance."

At the conclusion of the hearing, the trial court found that the Defendant violated the conditions of his probation, revoked his probationary sentence, and ordered him to serve the remainder of his six-year sentence in the DOC. This appeal followed.

ANALYSIS

On appeal, the Defendant contends that the trial court abused its discretion by imposing the original sentence instead of ordering "some other remedy other that [sic] full service of the sentence in the TDOC." The Defendant avers that the trial court failed to give weight to "the facts that [the Defendant] had not been arrested for any violent crime, he was willing to live with his mother, and his presence was needed to help with his mother, father and newborn child." The State contends that the trial court properly revoked probation and ordered the Defendant to serve his sentence in confinement. We agree with the State.

A trial court may revoke a sentence of probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of release. Tenn. Code Ann. § 40-35-311(e). The decision to revoke probation is in the sound discretion of the trial judge. State v. Kendrick, 178 S.W.3d 734, 738 (Tenn. Crim. App. 2005); State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). The judgment of the trial court to revoke probation will be upheld on appeal unless there has been an abuse of discretion. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). To find an abuse of discretion in a probation revocation case, "it must be established that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." Id. (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)); see also State v. Farrar, 355 S.W.3d 582, 586 (Tenn. Crim. App. 2011). Such a finding "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" State v. Shaffer, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999)).

A trial court is not required to find that a violation of probation occurred beyond a reasonable doubt. Stamps v. State, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980). The evidence need only show that the court has exercised conscientious judgment in making the decision and has not acted arbitrarily. Id. In reviewing the trial court's finding, it is our

obligation to examine the record and determine whether the trial court has exercised a conscientious judgment rather than an arbitrary one. Mitchell, 810 S.W.2d at 735.

The Defendant does not challenge the grounds supporting revocation. At the hearing, the Defendant's probation officer testified that, after being given yet another chance on probation, the Defendant continued to use drugs. Ultimately, the Defendant was arrested on February 9, 2011, for possession of marijuana for resale. At the time of his arrest, the Defendant had marijuana in his possession, another violation of the conditions of his probation. According to Mr. Irvin, the Defendant also failed to report for his scheduled appointments in January and February 2011. Moreover, Mr. Irvin stated the Defendant had twice been placed in a drug treatment program, failing to complete the program both times. When asked about possible alternatives for the Defendant if reinstated to probation, Mr. Irvin stated that he could not envision "any other program for [the Defendant]." Regardless of this evidence, the Defendant asks this court to reverse the trial court's imposition of confinement and grant him "some other remedy[.]"

There is ample proof in the record of the Defendant's repeated violations. It is clear that the Defendant violated the terms of his probation this time by committing a new offense, failing to report to his probation officer, and possessing illegal drugs. The Defendant has previously been found to be in violation of the terms of his probation, and the trial court allowed him to remain on probation instead of requiring confinement. Despite this largess, the Defendant continued to violate the terms of his probation. He has been given multiple chances. This court has repeatedly held that "an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." State v. Jeffrey A. Warfield, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. Feb. 10, 1999), perm. app. denied, (Tenn. June 28, 1999); see also State v. Timothy A. Johnson, No. M2001-01362-CCA-R3-CD, 2002 WL 242351, at *2 (Tenn. Crim. App. Feb. 11, 2002). The trial court acted within its discretionary authority to revoke the Defendant's probation and impose his original six-year sentence. See Tenn. Code Ann. §§ 40-35-310, -311(e).

## CONCLUSION

In sum, we conclude that the trial court did not abuse its discretion by ordering the Defendant to serve the remainder of his six-year sentence in confinement. Accordingly, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

-5-